UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GOES INTERNATIONAL, AB,<br><br>            Plaintiff,<br><br>     v.<br><br>DODUR LTD., et al.,<br><br>            Defendants. | Case No.14-cv-05666-LB<br><br>**ORDER GRANTING MOTION TO COMPEL**<br><br>[Re: ECF No. 69] |

## INTRODUCTION

This is a discovery dispute in a copyright-infringement case. The plaintiff alleges that the defendant illegally copied its software (a video game) and then distributed two pirated versions worldwide. Before the court is the plaintiff's motion to compel discovery. (ECF No. 69.)[1] The plaintiff has asked the defendant to produce information concerning the revenue that the defendant received from distributing the challenged software outside the United States. The defendant has refused, answering that U.S. copyright law gives the plaintiff no right to such "extraterritorial damages." The court received briefing and held a hearing on this matter. The court does not now decide whether the plaintiff can recover such damages. The factual record is too undeveloped, and

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

ORDER (No.3:14-cv-05666-LB)

the case is not procedurally poised, for that decision. For purposes of this discovery dispute, under Rule 26 of the Federal Rules of Civil Procedure, the court holds only that the requested information is relevant to the plaintiff's claims and (on this record) proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1). The court therefore grants the plaintiff's motion to compel.

## STATEMENT

The plaintiff is a Swedish software developer suing to protect its copyrighted video game. The plaintiff claims that the defendant — a Chinese company located and working entirely within that country — infringed its U.S. copyright by illegally copying its game and then uploading copyright-infringing, "virtual clones" of the plaintiff's product to the Internet for worldwide distribution. (*See generally* First Am. Compl. – ECF No. 27.) The plaintiff claims that the defendant thereby breached the U.S. Copyright Act, 17 U.S.C. § 106 *et seq.* (ECF No. 27 at 32-33 [¶¶ 69-75].)

The court previously held that it could exercise specific personal jurisdiction over the Chinese corporate defendant. (ECF No. 51.) In sum — and this is not meant to definitively restate the court's jurisdictional holding — this court concluded that the defendant had "expressly aimed" acts toward California by distributing the challenged games to U.S. consumers and by generating revenue in the United States. (*See id.* at 13.) The court also decided that the alleged infringement had caused the plaintiff "jurisdictionally significant harm" inside the United States. (*Id.* at 19.) Finally, the court found that the plaintiff's claim arose out of the defendant's activity in the United States, in particular, its distribution of the allegedly infringing games "via U.S. platforms." (*Id.* at 20.)

The court directs the reader to its personal-jurisdiction order (ECF No. 51) for a fuller recital of both the factual allegations and the court's jurisdictional reasoning.

The parties disagree over whether the plaintiff can recover damages flowing from the defendant's distribution of the challenged software outside the United States — so-called "extraterritorial damages." The plaintiff says that it can recover such damages; the defendant says it cannot. This substantive disagreement over damages has spawned the present discovery dispute.

14-cv-05666-LB
2

The plaintiff asks that the defendant be compelled to respond to the following requests for production: Nos. 4-6, 19, 28-30, 32-36. (ECF No. 69 at 2.) Only two of these requests overtly mention "revenue generated from [the challenged software's] distribution outside of the United States." (*See* ECF No. 62-1 at 9, 11 [RFP Nos. 19, 39].) But the defendant must feel that all the relevant requests potentially implicate global damages: To each of these requests the defendant objects that the plaintiff is not entitled to extraterritorial damages. (*See* ECF No. 62-1, *passim*.) For each challenged request, more exactly, the defendant writes: "GOES is not entitled to damages based on DODUR's extraterritorial revenue because no alleged infringement was completed entirely within the United States in violation of one of the five enumerated rights found in 17 U.S.C. § 106." (*E.g.,* ECF No. 62-1 at 22.)

The defendant makes other objections, as well, but it is extraterritorial damages alone that absorbed the parties' briefing on the motion to compel, and it is that subject only that this order addresses.

**ANALYSIS**

It is important to recall exactly what is before the court. This is a discovery motion. It is not a dispositive motion on the merits of the plaintiff's claim. The plaintiff is not limited to admissible evidence; it need not prove its claim. The plaintiff must show only that, given its claim, the requested discovery is relevant and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). "Information . . . need not be admissible in evidence to be discoverable." *Id.* In deciding whether the plaintiff has made that showing, the court can consider even inadmissible evidence. *Cf.* Fed. R. Evid. 104.

But all this limits the court's present holding. For the reasons given below, the court holds that the plaintiff may discover documents that reveal or touch upon the revenue that the defendant realized from worldwide distribution of the challenged video games. The court does not hold, and this discovery ruling does not imply, that the plaintiff will be permitted to recover extraterritorial damages. A substantive ruling on whether the plaintiff can prove such damages must await further factual development with legal argument attuned to those fuller facts. The court cannot reach a

14-cv-05666-LB

3

substantive decision — especially one of such potentially broad consequence — without fuller factual development using admissible evidence, and legal argument specifically directed to, and elaborated on the basis of, that fuller proof. With that important background in mind, the court turns to the Rule 26 analysis.

Rule 26(b)(1) of the Federal Rules of Civil Procedure describes the basic scope of discovery — *i.e.,* what information parties can rightly demand from one another:

> Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense and ***proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).[2]

Deciding whether proposed discovery is "relevant" to the plaintiff's claims of course requires some investigation into the substance of those claims. The defendant here essentially argues that information about its revenue from distribution outside the United States cannot be relevant because, as a matter of law, the plaintiff has no right under U.S. copyright law to such extraterritorial damages. The parties have given the court full and helpful briefing on the subject of such damages. The issue is not simple. Precedent reaches varying decisions depending on the precise factual details of the case before it: where was the illegal copy made, where was it broadcast from, where broadcast to, and so on. Considering the circumstances of this case, as they now appear, the court holds that it is at least plausible that the plaintiff may recover extraterritorial damages. Certainly it is too early, and the factual record too embryonic, to rule those out as a matter of law. The discovery requests are therefore relevant to the plaintiff's copyright claim.

Courts in the Ninth Circuit have treated questions of cross-border copyright infringement on

---

[2] The main text sets out the current version of Rule 26(b), which was amended effective December 1, 2015. "[I]t is well established that a court generally applies the law in effect at the time of its decision, and that if the law changes, . . . the . . . court applies the new rule." *Lambert v. Blodgett*, 393 F.3d 943, 973 n. 21 (9th Cir. 2004) (citing *Thorpe v. Durham Hous. Auth.*, 393 U.S. 268, 281 (1969)).

several relatively recent occasions. Again, no especially easy answer has emerged. Judge Armstrong of this court recently gave the basic picture:

> While it is clear "that the United States copyright laws do not reach acts of infringement that take place entirely abroad," *Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1098 (9th Cir. 1994), the more complicated question is whether the infringing conduct must occur entirely within the United States. *Shropshire v. Canning,* 809 F. Supp. 2d 1139, 1145 (N.D. Cal. 2011) (Koh, J.) ("courts are split on whether the infringing act must occur wholly within the United States or if the infringing act only must not occur wholly outside of the United States."). For instance, in *Allarcom Pay Television Ltd. v. General Instrument Corp.,* the Ninth Circuit stated that "**one alleged infringement must be completed entirely within the United States**." 69 F.3d 381, 387 (9th Cir. 1995) (holding that the Copyright Act did not apply to authorizing infringing transmissions that occurred in Canada or broadcasting infringing material from the United States into Canada because the infringing acts were not complete until the signal was received in Canada).
>
> In *Shropshire,* Judge Koh held that a plaintiff stated a claim for copyright infringement against a defendant who made a video in Canada that infringed the plaintiff's copyright, and then uploaded that video in Canada to YouTube's California servers. *Shropshire,* 809 F. Supp. 2d at 1145.

*Crunchyroll, Inc. v. Pledge*, No. 4:11-cv-2334-SBA, 2014 WL 1347492, *17 (N.D. Cal. Mar. 31, 2014) (emphasis added). On the more specific question of whether and when U.S. copyright law permits the recovery of extraterritorial damages, the Ninth Circuit seems to have laid down a two-part test. To recover such damages, a plaintiff must show that 1) "an act of infringement occurred[ed] within the United States, subjecting [the defendant] to liability . . . under the Copyright Act," and 2) the "damages flowed from extraterritorial exploitation of [the] infringing act that occurred in the United States." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-92 (9th Cir. 1998).

Much situational complexity lurks within these precedents. But the court thinks that, on the facts such as they currently appear in this case, the plaintiff may have a viable claim for damages "flow[ing] from extraterritorial exploitation of an infringing act" that occurred entirely inside the United States. At least, the facts and procedural posture of this case do not allow the court to hold as a matter of law that the plaintiff cannot recover such damages. Given the preliminary stage of this lawsuit, and the nature of the discovery issue before it, the court has largely accepted the factual representations of the parties' lawyers (where this did not require preferring one party's version of flatly contested facts), and has given more weight to those facts that are supported by

14-cv-05666-LB

5

some evidentiary filing — *i.e.*, something like merits proof. With that in mind, the facts appear to be as follows.

It is undisputed that the defendant downloaded the plaintiff's protected game from, and uploaded its own (allegedly infringing) games to, the Internet by way of Apple, Inc.'s "AppStore." The AppStore is where potential users could download the game. The infringing games have been downloaded at least 51,000 times in the United States. The defendant argues that its games were not uploaded onto U.S. computer servers; rather, they were uploaded onto Apple servers in China, from where Apple (not the defendant) may have made copies onto its U.S. equipment. In any case, the defendant argues that uploading alone is not a complete act of infringement that will trigger a damages recovery under U.S. copyright law. Maybe most centrally — given the court's personal-jurisdiction ruling and for now, until facts are better developed — in uploading its games to the AppStore, the defendant also (maybe purposely, maybe inadvertently) prompted Apple to distribute the challenged software worldwide.

The court holds that, on the present facts, the plaintiff has shown that the requested discovery is relevant to its claim under the Copyright Act and, more specifically, to its request for extraterritorial damages. The requested discovery is also "proportional to the needs of the case." The information specifically in question — that showing the defendant's revenue from distribution of the challenged games outside the United States — should be relatively ready to hand. Or readily gotten using data-analysis software. The plaintiff has a litigant's usual right to such information under Rule 26. The court is aware that the defendant is located in China and (as it describes matters) is a small concern with limited resources. The production requests here, though, should not be an excessive burden. Furthermore, although it is a concern, the defendant's financial wherewithal is not decisive. The advisory committee's notes to Rule 26 state: "[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." Fed. R. Civ. P. 26(b) advisory comm. notes (2015 amends.) Both parties should tailor their efforts to the needs of this case. Discovery and its costs are neither shield to ward off nor hammer to throttle the opposing party. To the contrary: "The parties and the court have a collective responsibility to consider the

14-cv-05666-LB
6

proportionality of all discovery and consider it in resolving discovery disputes." *Id.* Finally, the court thinks it relevant that the parties are moving toward settlement discussions. The requested discovery may "likely benefit" both parties in that endeavor by helping to accurately fill out the picture of this developing lawsuit. *See id.* (proportionality weighs both "expense" and "likely benefit" of discovery).

The court expresses its appreciation to both parties for their excellent discussion of extraterritorial damages in copyright law. Were the factual record better developed, more firmly established, and were this case in an appropriate procedural posture, the parties' good analyses would have permitted a substantive decision. But, as things stand, a merits decision must await another day.

The court remains open to staging damages discovery after an early summary-judgment motion on the extent of the alleged infringement. The court understands that the defendant wanted to avoid the expense of litigation. But the court sees no other way to resolve this dispute.

## CONCLUSION

For these reasons, the court grants the plaintiff's motion to compel the requested discovery. This disposes of ECF No. 69.

**IT IS SO ORDERED.**

Dated: February 4, 2016

LAUREL BEELER
United States Magistrate Judge